UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 06-50013 |
| | CIVIL ACTION NO. 08-1702 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JAMES T. HILL | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Record Document 77) filed by *pro se* Petitioner James T. Hill("Hill"). Hill sets forth three grounds in support of his Section 2255 motion: (1) ineffective assistance of counsel; (2) an unreasonable sentence above the Guideline Range; and (3) a sentence in violation of United States v. Jackson, 167 F.3d 1280 (9th Cir. 1999). For the reasons set forth below, Hill's motion is **DENIED**.

**BACKGROUND**

On March 23, 2006, a federal grand jury returned a Second Superceding Indictment against Hill, a medical doctor. See Record Document 27. Counts 1 through 32 charged Hill with health care fraud. See id. Counts 33 through 112 charged Hill with distributing or dispensing or causing to dispense a controlled substance, when said act of dispensing and causing to be dispensed was not in the usual course of professional practice and not for a legitimate medical purpose. See id. Count 113 charged Hill with being an accessory after the fact. See id. Count 114 was a forfeiture count. See id.

On December 6, 2006, pursuant to a written plea agreement, Hill pled guilty to Counts 4 and 34 of the Second Superceding Indictment. See Record Documents 62-63. Count 4 charged him with health care fraud on February 03, 2004. See Record Document

27. Count 34 charged him with distributing a controlled substance on February 3, 2004. See id.

On March 21, 2007, Hill was sentenced to 120 months imprisonment as to Count 4 and 200 months imprisonment as to Count 34. See Record Documents 67 and 69. The sentences were to run concurrently. See id. On November 19, 2007, the United States Court of Appeals for the Fifth Circuit affirmed Hill's sentence. See Record Document 76.

## LAW AND ANALYSIS

**I.	Claims Not Cognizable Under 28 U.S.C. § 2255.**

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled to presume that the defendant stands fairly and finally convicted." U.S. v. Shaid, 937 F.2d 228, 231-232 (5th Cir. 1991), quoting U.S. v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584, 1592 (1982). "Our trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary, a final judgment commands respect." Frady, 456 U.S. at 164-65, 102 S.Ct. at 1593. Consequently, issues that can be presented in a motion filed under 28 U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional magnitude. See Shaid, 937 F.2d at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error. Id. at 168. To establish "cause," a defendant must show some external impediment prevented him from raising the claim on direct appeal. See U.S. v. Flores, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233.

A narrow exception to the "cause and actual prejudice" requirement exists in extraordinary cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 232. The Supreme Court has emphasized that this exception is limited to only those cases involving "manifest miscarriages of injustice" that would result in the continued incarceration of an innocent person.[1] Id., citing Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2649 (1986). Hill has not attempted to invoke the actual innocence exception in this matter and the record is clear that any attempt to do so would fail.

### A.  Claims Relating to Sentencing.

It appears that Hill's claims that his sentence was unreasonable and that his

---

[1]To establish "actual innocence" in a case where the petitioner entered a plea of guilty, he must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998), citing Schlup v. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 867-68, 130 L.Ed.2d 808 (1995).

sentence was in violation of Jackson, 167 F.3d 1280, are not cognizable under Section 2255. The scope of relief under Section 2255 is limited and the Fifth Circuit has consistently held that "a district court's technical application of the Guidelines does not give rise to a constitutional issue." Vaughn, 955 F.2d at 368.

Notwithstanding, even if Hill's claims relating to his sentence are cognizable, they fail on the merits. Hill appealed his sentence to the United States Court of Appeals for the Fifth Circuit. See Record Document 70. On December 20, 2007, the Fifth Circuit affirmed Hill's sentence, stating:

> Hill challenges the amount of drugs attributed to him in calculating his sentence. Hill also challenges the district court's imposition of a non-Guideline sentence as to the latter count - 200 months of imprisonment - which was 49 months above the advisory guideline range maximum of 151 months as calculated in the presentence report.
>
> . . .
>
> Hill argues that the district court erred when it based his offense level and sentence on conduct that was not part of the same course of conduct or common scheme or plan as the offense of conviction. In determining a defendant's base offense level, the district court may consider drug quantities not specified in the count of conviction if they are part of the defendant's relevant conduct. Relevant conduct includes acts that were part of a common scheme or plan or the same course of conduct as the offense of conviction. Hill failed to present any evidence to rebut the information contained in the presentencing report or the evidence adduced at sentencing by Government witnesses regarding the amount of drugs attributable to him. The record reflects that Hill wrote prescriptions for addictive painkillers to patients that he had not examined and also billed the patients and their insurance companies. At all times, Hill's victims were his patients and Hill acted with a common purpose - to dispense controlled substances in a manner not consistent with a legitimate medical purpose and not within the usual course of a physician's practice. Accordingly, the district court's factual-finding regarding the drug quantity was not clearly erroneous in light of the record as a whole.
>
> Hill also argues that the district court failed to properly consider the factors in 18 U.S.C. § 3553(a) when it imposed a non-Guideline sentence.

> Contrary to Hill's assertions, the district court made specific findings regarding the nature and circumstances of the offense as well as the history and characteristics of the offense as well as the history and characteristics of the defendant when it found Hill placed his patients at risk when he left the country and permitted non-medically trained staff to fill out pre-signed blank prescriptions and also permitted them to distribute post-dated prescriptions. As the district court found, in light of the degree of the abuse of his position of trust and his medical license, the court also considered the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. The district court found that Hill's behavior was more than just abusing his position of trust as a doctor, he was a drug dealer with a medical license. The court also considered the need for adequate deterrence and warned other doctors of the dangers of practicing medicine in the manner the defendant practiced. The court considered the need to protect the public from further crimes of the defendant in light of the harm that Hill had caused the community and the profession of medicine. The court deviated because it felt that the facts of [this] case fell outside the heartland of cases. Hill has not shown that the district court misapplied the Guidelines, failed to consider the § 3553(a) factors, failed to give reasons for the sentence, or considered improper factors in imposing the sentence. ***Therefore, he has not shown that the sentence imposed was unreasonable.***

Record Document 76 at 2-4 (internal citations and quotations omitted) (emphasis added).

Based on the aforementioned excerpts from the Fifth Circuit's opinion, it is clear that the Fifth Circuit considered, and ultimately rejected, Hill's argument that his above-Guideline sentence was unreasonable. Hill has not provided any novel argument on this issue in his Section 2255 motion. Thus, this argument need not be reconsidered by the Court as it was rejected on direct appeal. See U.S. v. Segler, 37 F.3d 1131, 1134 (5th Cir. 1994) ("We considered, and rejected, this argument on direct appeal. Therefore, we need not reconsider this argument on § 2255 review.").

Hill's next argument relating to his sentence is somewhat unclear and is undeveloped in his brief. In his motion, he wrote: "Sentencing for 'drug' charge exceeded statutory maximum for Schedule IV." Record Document 77 at 5. As supporting facts, he

explained:

> As per page 160 of sentencing hearing transcript, the "drugs" for which I was held responsible included a total of 75: 24 of these were of Schedule IV; 27 Schedule III; 24 Schedule II. Cite: U.S. v. Jackson, 167 F.3d 1280 - page 1284, footnote 6.

Id. While Hill references Jackson, the Court's review of page 160 of the sentencing transcript reveals that Hill's argument relates to drug quantities considered as part of relevant conduct. The Fifth Circuit's opinion clearly shows that Hill's objection to the consideration of certain drug quantities as relevant conduct was considered and rejected by the appellate court. Therefore, this argument need not be reconsidered by this Court in a Section 2255 motion. See Segler, 37 F.3d at 1134.[2]

## II.  Ineffective Assistance of Counsel.

The general rule prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel. Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003). The procedural-default rule is a doctrine employed by the courts "to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id. Requiring a criminal defendant to bring ineffective assistance of counsel claims on a direct appeal promotes neither of these objectives. Moreover, a claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations. See U.S. v. Alanis, 88 Fed. Appx. 15, 19 (5th Cir. 2004). Thus, a criminal defendant is properly permitted to bring ineffective

---

[2] The Court further notes that a Ninth Circuit opinion such as Jackson is not binding precedent upon this Court.

assistance of counsel claims in a collateral proceeding under Section 2255, regardless of whether such claims could have been raised on direct appeal. See id.

To prevail on his claims of ineffective assistance of counsel, Hill must prove (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, Hill must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id., 466 U.S. at 690, 104 S.Ct. at 2066. Under the second prong of the Strickland test, Hill must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

Failure to establish either Strickland prong defeats the claim. See Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997). Courts may also analyze the prongs in any order. See Goodwin v. Johnson, 132 F.3d 162, 173 n. 6 (5th Cir. 1997) ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an

insufficient showing on one.").

In the context of a guilty plea, prejudice is present only if there is a reasonable probability that, but for counsel's errors, the defendant would not have entered a guilty plea and would have insisted on a trial. See Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 369 (1985); Theriot v. Whitley, 18 F.3d 311, 313 (5th Cir. 1994). "A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant." U.S. v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." Id. Therefore, "even where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary" because in such cases there has been "no actual and substantial disadvantage to the defense." DeVille v. Whitley, 21 F.3d 654, 659 (5th Cir. 1994).

In this matter, Hill argues that his attorneys were ineffective because they informed him that he would not receive more than 46 months in jail. See Record Document 77 at 7-12. More specifically, he contends:

> My lawyers informed me that it would not be possible to spend more than 46 months in prison. I would never have entered a guilty plea if I had believed that there was the slightest possibility that I could be sentenced beyond 46 months.

Id. at 7.

Hill's allegations are inconsistent with his signed plea agreement. See Record Document 63. Paragraph 3 of the Plea Agreement provides:

> The Defendant understands and acknowledges that a final determination of the applicable guidelines range cannot be made until the completion of the presentence investigation and that sentencing in this matter is within the discretion of the Court.

Record Document 63 at ¶ 3. Moreover, paragraph 4 of the Plea Agreement outlines the maximum punishment for Counts 4 and 34, which is a term of imprisonment of not more than 20 years for both counts. See id. at ¶ 4. Moreover, the written plea agreement contains no language about a specific promise and stated:

> This is the entire plea agreement between the United States Attorney's Office and the Defendant and is entered into freely, knowingly, and voluntarily with no threats or coercion, after due consultation with his attorney.

Id. at ¶ 11. Hill also signed a form entitled "Understanding of Maximum Penalty and Constitutional Rights," which provided:

> I further state that my plea is in this matter is free and voluntary and that it has been made without any threats or inducements whatsoever (except the plea agreement) from anyone associated with the State or the United States Government or my attorney.

Record Document 63-1 at 2. All of the signed documents are entitled to "great evidentiary weight." U.S. v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994).

Hill's statements during the guilty plea are also inconsistent with his argument that he was told he would not receive over 46 months imprisonment. During the plea colloquy, the defense attorney explained:

> Specifically, I know you want to make sure he understands the penalties, the maximum penalty, and we have obviously been over that. . . . Dr. Hill, you know, was concerned about the maximum penalty, and I told him that, you know, if we read the Plea Agreement, that he has to know what the maximum penalty is, ***that no one could guarantee him what your sentence is going to be***, but that as part of the Plea Agreement, it does say that this will be covered by the sentencing guidelines as modified by Booker. And I told him what the Government felt the guideline range was, and I told him that, you know, ***my opinion*** was that it was less than that, but that would be something we would argue after the presentence report. . . . Although he has to know what the maximum penalty is, I have told him he wasn't going to get the maximum penalty. ***And I know that I can't speak for what your sentence is***, but I know he's not going to get the maximum penalty, and I've

told him that, Judge.

Guilty Plea Transcript at 14-15 (emphasis added). Hill acknowledged, under oath, that the plea was a free and voluntary on his part. See id. at 28. He also stated that he understood the maximum penalty for Counts 4 and 34. See id. at 31-34. The following colloquy reveals that Hill understood he could face up to 40 years in prison:

> THE COURT: All right. In this instance, there is the possibility, then, that you could face somewhere between zero and 40 years because the sentences could be hooked or linked together one after the other. . . . Do you understand that?
>
> THE DEFENDANT: I do.

Id. at 33.

Hill also specifically acknowledged that no one had made him any promises other than those contained in the Plea Agreement:

> THE COURT: Mr. Hill, let me ask you this question: Has anyone made you a promise, other than what's recited in this Plea Agreement?
>
> THE DEFENDANT: No.
>
> THE COURT: Is there any other agreement that's lurking out there that's not recited in the Agreement, Mr. Gold?
>
> MR. GOLD: No, sir, there's no agreement, other than I expressed earlier when we were discussing the plea and his only hesitancy was the maximum penalty, I told him he wasn't going to get the maximum penalty under the guidelines.
>
> THE COURT: Yeah. I can't tell him that.
>
> MR. GOLD: I know that.
>
> THE COURT: You can.

>   MR. GOLD: But I just didn't want – I didn't want it to come back later that I didn't disclose everything.

Id. at 43.  The Court explained to Hill in great detail that there was no guarantee his sentence would be within the Guideline range:

>   THE COURT: I don't know what your sentence is going to be as we all are here in this courtroom today.  The reason is, I don't have a presentence report in front of me, and the presentence investigation hasn't even really begun.  I'll order that it be started at the end of today's proceeding. That written report writing up what they found out during the investigation will be sent to Mr. Gold, and he'll go over it with you line-by-line. If there are objections to it factually or legally, he'll file those. The Government gets the same copy of the report. They get the same opportunity to file objections. I get a copy of the report. I don't object to it; I just have to resolve the objections. That's my responsibility in this. Do you understand that procedure?
>
>   THE DEFENDANT: I understand.
>
>   . . .
>
>   *THE COURT: . . . Here's the kicker: Even though those guidelines have to be correctly computed, that is, the numeric value as a final value has to be correctly calculated, and your criminal history has to be correctly characterized, once we see where those lines intersect on that chart, that doesn't mean that's where I'm going to sentence you. Clear enough?*
>
>   *THE DEFENDANT: Uh-huh.*
>
>   *THE COURT: It can be above or below that recommended sentence. Understand?*
>
>   *THE DEFENDANT: Uh-huh.*
>
>   THE COURT: What I need to be sure that you understand is, if you come into court with a particular sentence fixed in your brain that you just know I'm going to give you and, lo

>and behold, it's more severe, it involves a greater length of time or more money than you thought, I need to be sure that you understand you're still bound by the guilty plea that you enter today and that you would have no right to withdraw your guilty plea for that reason. Clear enough?

THE DEFENDANT: I understand.

THE COURT: Just because you don't like the sentence I may ultimately impose gives yo no right to withdraw your guilty plea.

THE DEFENDANT: Right.

THE COURT: Clear? All right. Mr. Gold, anything further on that issue that needs to be explained in greater detail?

MR. GOLD: No, sir.

THE COURT: Mr. Gold has a responsibility of explaining how this system works to you based on his lengthy experiment, or experience rather, in the federal and state systems. He can hazard a guess as to what he thinks I might do, ***but he can't tell you what I'm going to do, just like I can't tell you what I'm going to do either.*** I don't know enough about you to sentence you as of today. We're simply at a guilty plea stage. Clear enough?

THE DEFENDANT: Clear.

Id. at 45-47 (emphasis added).

All of Hill's sworn statements made in open court "carry a strong presumption of verity" and he faces a heavy burden in disproving them. Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977). Here, he has simply failed to present any evidence, other than the conclusory and wholly unfounded allegation that the guilty plea transcript has been edited, to refute the sworn statements he made in open court. In fact, while Hill has presented an affidavit signed by his attorneys, it does not establish that they promised

him a sentence of no more than 46 months. Rather, the affidavit simply states:

> [H]e was advised that, in their opinion, the sentencing guidelines for the two counts to which he pled guilty provided for a sentencing range of 37 to 46 months.
>
> . . .
>
> [T]hey did not anticipate, nor did they advise Dr. Hill, that the court would likely deviate upwardly from the guidelines imprisonment range that was ultimately used.

Record Document 77 at 13.

Hill has failed to refute his written and oral statements made at the time of the guilty plea. The record shows that he was advised about his possible exposure and he was not promised a specific sentence. Hill has simply not shown that the actions of one or both of his attorneys rendered his plea involuntary. Thus, his ineffective assistance of counsel argument fails.

## CONCLUSION

Based on the foregoing, the Court finds that Hill's claims challenging his sentence and his contention that he was denied effective assistance of counsel fail. The Section 2255 motion is, therefore, **DENIED**.

Pursuant to Rule 11(a) of the Rules Governing 2255 proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order that is adverse to the applicant. "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a) Rule Governing Section 2255 Proceedings for the United States District Courts (emphasis added). Unless a Circuit Justice or District Judge issues a certificate of

appealability, an appeal may not be taken to the court of appeals.

In this instance, a certificate of appealability is **DENIED** because Hill, the applicant, has failed to demonstrate a substantial showing of the denial of a constitutional right.

An order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 27th day of March 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE